**Loren G. DAVID, Plaintiff and Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Merrill Lynch Commodities, Inc., and Edward Williams, Defendants and Appellees.**

**Civ. No. 880234.**

Supreme Court of North Dakota.

April 24, 1989.

practical nurse unless currently licensed to do

Edmund G. Vinje II, of Vinje Law Office, Fargo, for plaintiff and appellant.

so."

James B. Vessey (argued), of Dorsey & Whitney Law Firm, Minneapolis, Minn., and Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellees.

VANDE WALLE, Justice.

Loren G. David appealed from a summary judgment granted in favor of Merrill Lynch, Pierce, Fenner, and Smith, Inc., Merrill Lynch Commodities, Inc. [hereinafter collectively referred to as Merrill Lynch], and Edward Williams. The district court determined that there was no genuine issue of material fact as to David's claim that he was fraudulently induced to enter into an arbitration agreement, concluded that the arbitration agreement complied with applicable statutes and regulations, and ordered that all other claims be compelled to arbitration. We affirm.

In May 1981 David, then a 26 year-old farmer from Lidgerwood, visited Merrill Lynch's Fargo office and opened a commodity trading account with $5,000. He met with Bruce Pearson, a broker with the company. Pearson provided David with a "Commodity Account Agreement" and a "Risk Disclosure Statement." One page of the documents contained three separate lines for the customer's signature. Above the first signature line was an acknowledgment that the customer had received and understood the "Risk Disclosure Statement" and the "Commodity Account Agreement." Above the second signature line was an authorization to transfer funds from the customer's commodity account to the customer's other accounts. Above the third signature line was an "Arbitration Agreement" providing in part that "[a]ny controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the contract market upon which the transaction giving rise to the claim was executed or the New York Stock Exchange, Inc. as I may elect." Printed in boldface type below this language but above the third signature line appears the following:

"While the Commodity Futures Trading Commission (CFTC) encourages the settlement of disputes by arbitration, it requires that your consent to such an agreement be voluntary. You need not sign this Arbitration Agreement to open an account with Merrill Lynch Pierce Fenner & Smith, Inc. (See 17 CRF [sic] 180.1–180.6)

"By signing this Arbitration Agreement, you may be waiving your right to sue in a court of law. But you are not waiving your right to elect later to proceed pursuant to Section 14 of the Commodity Exchange Act to seek damages sustained as a result of a violation of the Act. In the event a dispute arises you will be notified that Merrill Lynch Pierce Fenner & Smith, Incorporated intends to submit the dispute to arbitration. If you believe a violation of the Commodity Exchange Act is involved and you prefer to request a Section 14 'Reparations' Proceeding before the CFTC, you will still have 45 days in which to make that election."

According to David, Pearson did not explain the documents to him during their 20–minute meeting but merely placed an "X" by each signature line and told him to sign the document. David did so. David began trading on a regular basis and, at David's request, Edward Williams took over the account from Pearson. According to to David, in December 1981 he suffered a $30,000 loss allegedly caused by Williams's mishandling of a trade and thereafter discontinued doing business with Merrill Lynch.

David brought this action against Merrill Lynch and Williams in April 1982 alleging breach of contract, negligence, fraud, and deceit. He also claimed that he had been fraudulently induced to enter into the arbitration agreement. David sought actual damages in the amount of $30,000, damages for physical and emotional distress, and punitive damages. Merrill Lynch counterclaimed for a $7,339 debit in David's account. In August 1982 Merrill Lynch moved to compel arbitration in accordance with the parties' agreement. The district court denied the motion, concluding that State law controlled and that an arbitration

agreement could not be specifically enforced under North Dakota law.[1]

In 1984 Merrill Lynch, relying upon the United States Supreme Court's decision in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), again moved to compel arbitration. The district court denied the motion. The court held that although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* preempts contrary State law under *Southland Corp. v. Keating,* 7 U.S.C. § 7a(11) of the Commodity Exchange Act prohibits arbitration of commodity disputes involving claims in excess of $15,000. The court also determined that under 9 U.S.C. § 2, it had jurisdiction to resolve David's fraud-in-the-inducement claim.

In 1988 Merrill Lynch sought reconsideration of the district court's holding that 7 U.S.C. § 7a(11) precluded enforcement of the arbitration agreement and moved for summary judgment on the issue of fraud in the inducement. The district court reversed its prior decision[2] and held that 7 U.S.C. § 7a(11) did not void the parties' arbitration agreement. The court also held that the arbitration agreement complied with applicable Commodity Futures Trading Commission [CFTC] regulations. The court further determined that there was no genuine issue as to any material fact with regard to David's fraud-in-the-inducement claim. The court ordered the matter compelled to arbitration and David appealed.

Summary judgment is appropriate when there is no dispute as to material facts, or when, although factual disputes exist, the law is such that resolution of the factual disputes will not change the result. *Rus-*

*sell v. Bank of Kirkwood Plaza,* 386 N.W.2d 892 (N.D.1986). On appeal we determine whether the information provided to the trial court, when viewed in the light most favorable to the losing party, precludes the existence of a genuine issue of material fact and entitles the moving party to judgment as a matter of law. *Union State Bank v. Woell,* 434 N.W.2d 712 (N.D. 1989).

I

■ David asserts that arbitration is improper in this case because his claim against Merrill Lynch exceeds $15,000. Prior to 1983, 7 U.S.C. § 7a(11) provided:

"*§ 7a. Duties of contract markets*[3]

"Each contract market shall—

\*   \*   \*   \*   \*   \*

"(11) provide a fair and equitable procedure through arbitration or otherwise (such as by delegation to a registered futures association having rules providing for such procedures) for the settlement of customers' claims and grievances against any member or employee thereof: *Provided,* That (i) the use of such procedure by a customer shall be voluntary, (ii) the procedure shall not be applicable to any claim in excess of $15,000, ..." [Emphasis in original.][4]

David relies on *Breyer v. First Nat'l Monetary Corp.,* 548 F.Supp 955 (D.N.J. 1982), in which the court determined that 7 U.S.C. § 7a(11) precluded any claim in excess of $15,000 from being subject to arbitration. However, this narrow view of the pre–1983 version of the statute has not been adopted by most courts or the CFTC

1. The district court relied on former § 32–04–12(3), N.D.C.C., which provided that "[a]n agreement to submit a controversy to arbitration" could not be specifically enforced. In 1985, the Legislature removed arbitration agreements from the list of obligations that cannot be specifically enforced. See 1985 N.D.Sess.Laws Ch. 373 § 1.

2. Judge Garaas, who issued the 1982 and 1984 rulings in this case, had retired and the case was reassigned to Judge Rothe.

3. A "contract market" has been defined as an "Exchange or Board of Trade where futures

contracts are traded and so designated by the Secretary of Agriculture...." 1974 U.S.Code Cong. & Ad.News 5891. For an informative description of the commodity futures trading business and history of government regulation of commodity future exchanges, see *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

4. Effective January 11, 1983, the clause pertaining to the $15,000 ceiling was deleted from 7 U.S.C. § 7a(11). See Futures Trading Act of 1982, Pub.L. No. 97–444, § 217(a) and 239.

itself. In 1975 the CFTC interpreted this statute as follows:

"The Commission interprets section 5a(11) of the Commodity Exchange Act [7 U.S.C. § 7a(11)] as not prohibiting a contract market from establishing arbitration or other procedures for the resolution of customer claims involving amounts over $15,000. Any such arbitration or other procedures must be a separate procedure which is independent of, and should not interfere with or delay the resolution of customer claims that are submitted under section 5a(11)...."

CFTC, Exchange Arbitration Procedures, Interpretation and Request for Comments, 40 Fed.Reg. 29122 (July 10, 1975).

The Commission proceeded to promulgate regulations that allowed such agreements regardless of the amount in controversy. See 17 C.F.R. § 180.5 (1983).[5] The rationale for this position is that the intent of former § 7a(11) was to require contract markets to establish arbitration procedures only for claims under $15,000 by customers who voluntarily chose to arbitrate but not to prohibit arbitration of claims exceeding $15,000. See generally, *Geldermann, Inc. v. C.F.T.C.*, 836 F.2d 310 (7th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988). In compelling a $24,000 claim to arbitration, the First Circuit Court of Appeals in *Ingbar v. Drexel Burnham Lambert Inc.*, 683 F.2d 603, 605 (1st Cir.1982), stated:

**5.** 17 C.F.R. § 180.5 (1983), provided:

"*§ 180.5 Other customer claims and grievances or disputes.*

"A contract market may establish a procedure for settlement of customers' claims and grievances or disputes against any member or employee thereof, which are not covered by §§ 180.1 through 180.4 of this part. The procedure shall be independent of, and shall not interfere with or delay the resolution of, customers' claims or grievances submitted for resolution under the contract market procedure established pursuant to the Act. The procedure must be voluntary, and must be fair and equitable as defined by § 180.2 of this part, except that the aggregate monetary value of the claim or grievance or counterclaim, if any, may exceed $15,000."

**6.** 17 C.F.R. 180.3(b)(4) (1983), provides:

"This provision ... merely requires 'contract markets,' such as Comex, to establish arbitration procedures for settling small disputes. It does not preclude claimants from going to court, from invoking CFTC reparations proceedings under 7 U.S.C. § 18, or from using (or agreeing in advance to use) other, 'off-market' procedures to settle their disputes if they so choose. Indeed, the CFTC has promulgated regulations that specifically permit the use of pre-dispute arbitration procedures that meet certain conditions...."

Accordingly, most courts have either explicitly or implicitly recognized that the former version of 7 U.S.C. § 7a(11) did not bar arbitration of disputes in excess of $15,000. See, e.g., *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Corcoran v. Shearson/American Exp. Inc.*, 596 F.Supp. 1113 (N.D.Ga.1984); *Hagstrom v. Breutman*, 572 F.Supp. 692 (N.D.Ill.1983); *Milani v. Conticommodity Serv., Inc.*, 462 F.Supp. 405 (N.D.Cal.1976).

We agree with this view. Therefore, we conclude that David's $30,000 claim against Merrill Lynch does not render the arbitration agreement unenforceable.

## II

David asserts that the arbitration clause is a nullity because it does not comply with the applicable CFTC regulations. Pursuant to 17 C.F.R. 180.3(b)(4) (1983),[6]

"(4) The customer agreement must contain cautionary language, printed in large boldface type, to the following effect:

"WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [name]. See 17 CFR 180.1–180.6.

"BY SIGNING THIS AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW, BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT AT A LATER DATE TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF

arbitration provisions in customer agreements "must contain cautionary language, printed in large boldface type, . . ." Although the language appearing in the agreement at issue in this case is in boldface type, David asserts that it is not "large," presumably because it is not printed in capital letters as is the illustration in the regulations.

The language in the arbitration clause in this case appears visibly larger than the other clauses in the agreement. Although the illustration in the regulations is printed in capital letters, the regulation itself does not expressly so require. Rather, we believe that the regulation is merely intended to make the arbitration clause clearly distinguishable from other clauses of the agreement in a manner that draws the customer's attention to it. See generally, 41 Fed.Reg. 42943 (Sept. 29, 1976). This arbitration clause does that. We therefore conclude that it complies with the applicable regulations.

## III

■ David asserts that the district court erred in granting Merrill Lynch's motion for summary judgment on his claim that he was fraudulently induced to enter into the arbitration agreement.

The facts David relies on to support this claim are: his meeting with Pearson at the Merrill Lynch offices during which he signed the agreement lasted only 20 minutes; he did not read the agreement; Pearson did not orally explain the documents to him or tell him that he need not sign the arbitration agreement to open an account; Pearson placed an "X" by the three signature lines; and David did not receive a copy of the agreement.

The "[f]ailure to read a document before signing does not excuse ignorance of its

THE ACT[.] IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [name] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 'REPARATIONS' PROCEEDING BEFORE THE CFTC, YOU WILL STILL HAVE 45 DAYS IN WHICH TO MAKE THAT ELECTION."

We note that, effective August 15, 1983, the CFTC modified the required language. 17 C.F.R. 180.3(b)(6) (1988), currently provides:

"(6) The agreement must include the following language printed in large boldface type:

"THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF–REGULATORY OR OTHER PRIVATE ORGANIZATION.

"THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.

"BY SIGNING THIS AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR [NAME] MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [NAME] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 'REPARATIONS' PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.

"YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [NAME]. SEE 17 CFR 180.1–180.5."

David does not assert that the arbitration agreement in this case can no longer be enforced because it does not comply with the modified language in 17 C.F.R. 180.3(b)(6) (1988). See generally, *Gans v. Merrill Lynch Futures, Inc.*, 814 F.2d 493 (8th Cir.1987); *Wotkyns v. D.E. Jones Commodities, Inc.*, 791 F.2d 749 (9th Cir.1986).

contents unless the party shows that 'he was prevented from reading it by fraud, artifice, or design by the other party or his authorized representative.' " *Pioneer Credit Co. v. Medalen,* 326 N.W.2d 717, 719 (N.D.1982) [quoting *Oliver–Mercer Electric Cooperative, Inc. v. Fisher,* 146 N.W.2d 346, 357 (N.D.1966)]. David does not assert that Pearson prevented him from reading the agreement. We conclude that David has not raised a genuine issue of fact that he was fraudulently induced to sign the arbitration agreement.

Where the language of a contract clearly and explicitly provides for arbitration of disputes arising out of the contractual relationship, a broker has no duty, fiduciary or otherwise, to verbally draw the customer's attention to an arbitration clause in the contract. *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282 (9th Cir.1988); see also, *Ingbar v. Drexel Burnham Lambert Inc.,* 683 F.2d 603 (1st Cir.1982). Moreover, the mere placing of an "X" by the signature line does not alone rise to the level of fraudulent conduct required to invalidate the arbitration agreement. *Smoky Greenhaw Cotton v. Merrill Lynch, Etc.,* 720 F.2d 1446 (5th Cir.1983), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). Although David did not receive a copy of the agreement, we do not see how this translates into fraudulent conduct. The agreement specifically states below the third signature line that "[a] copy of this document is available upon request." David does not assert that he requested, and was denied, a copy of the agreement.

David's related assertion that a mistake of fact occurred because he believed it was necessary for him to sign the spaces marked with an "X" in order to open an account is equally unavailing. The language of the arbitration clause, in large boldface type and separately signed by David, says the opposite. A person having the capacity and opportunity to read a contract and who is not misled as to its contents cannot avoid the contract on the ground of mistake if the person signs it without reading it. *Hanes v. Mitchell,* 78 N.D. 341, 49 N.W.2d 606 (1951).

It is clear that David's perceived predicament is due, not to any action on the part of Merrill Lynch, but to his simple failure to read the agreement he signed. We conclude that, as a matter of law, Merrill Lynch's actions do not amount to fraud or deceit.

## IV

David relies on numerous other theories in an attempt to avoid the effect of the arbitration agreement.

■ We reject David's argument that the arbitration agreement constitutes a contract of adhesion which should not be enforced. There is nothing inherently unfair or oppressive about arbitration clauses. E.g., *Coleman v. Prudential Bache Securities, Inc.,* 802 F.2d 1350 (11th Cir.1986). The arbitration clause in this case specifically stated in large boldface type that David need not sign it to open an account with Merrill Lynch. The arbitration clause was a voluntary feature of the agreement. David cannot claim as an adhesion contract a provision which he had the opportunity of not including in the parties' agreement. Cf. *Roberts v. Smith Barney, Harris Upham & Co., Inc.,* 653 F.Supp. 406 (D.Mass. 1986).

■ David asserts that Merrill Lynch is estopped from relying on the arbitration agreement because it answered his complaint, counterclaimed, and participated in discovery before moving to compel arbitration. We disagree. Under the Federal policy favoring arbitration, a party does not automatically waive arbitration merely by engaging in pleading and discovery activities. E.g., *Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691 (9th Cir.1986); *ATSA of California, Inc. v. Continental Ins. Co.,* 702 F.2d 172 (9th Cir.1983), *amended,* 754 F.2d 1394 (9th Cir.1985). More is required than action inconsistent with the arbitration provision; prejudice to the party opposing arbitration must also be shown. *Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473 (9th Cir.1984).

In this case, David originally filed a Reparation Claim against Merrill Lynch with the CFTC which it ultimately dismissed without prejudice. David brought this suit in April 1982 and Merrill Lynch answered and counterclaimed in April 1982 and moved to compel arbitration in August 1982. Merrill Lynch has persisted since then in seeking to compel arbitration. David has not shown how he was prejudiced by Merrill Lynch's actions. We therefore conclude that Merrill Lynch is not estopped from seeking to enforce the arbitration agreement.

■ David also asserts that he cannot be bound to arbitrate his claims against Merrill Lynch Commodities, Inc., and Williams because they were neither named in, nor signatories to, the arbitration agreement. We disagree. Nonsignatories to a contract containing an arbitration clause may be deemed parties thereto, through ordinary contract and agency principles, for purposes of the Federal Arbitration Act. *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986); *Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923 (3rd Cir.1985); *Hartford Fin. Systems v. Fla. Software Serv., Inc.,* 550 F.Supp. 1079 (D.Me.1982), *appeal dismissed,* 712 F.2d 724 (1st Cir.1983), and cases cited therein. It has also been held that brokers and brokerage firms can be third-party beneficiaries of arbitration agreements. See *Nesslage v. York Securities, Inc.,* 823 F.2d 231 (8th Cir.1987).

David alleged in his complaint that Merrill Lynch Commodities, Inc., is a wholly-owned subsidiary of Merrill Lynch, Pierce, Fenner, and Smith, Inc., that Williams was an agent of both corporate entities, and that his claims for relief arise from actions of the agents of the corporate defendants. All of the allegedly wrongful acts relate to the handling of David's account. We conclude that the arbitration agreement is applicable to David's claims against Williams and Merrill Lynch Commodities, Inc.

We have reviewed the other arguments presented by David and deem them to be without merit. Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.