2016 ND 95

**26TH STREET HOSPITALITY, LLP,**
**Plaintiff and Appellant**

**v.**

**REAL BUILDERS, INC.; Joel J. Feist, individually and as Managing Partner of 26th Street Hospitality, LLP; Joeleon Holdings, LLP; and Solid, LLC, Defendants.**

**Real Builders, Inc.; Joel J. Feist, individually and as Managing Partner of**

**26th Street Hospitality, LLP; Joeleon Holdings, LLP, Appellees.**

No. 20150259.

Supreme Court of North Dakota.

May 26, 2016.

Randall J. Bakke (argued) and Bradley N. Wiederholt (appeared), Bismarck, N.D., for plaintiffs and appellants.

Matthew T. Collins (argued), Minneapolis, MN, and Julia J. Douglass (on brief), Minneapolis, MN, for defendants and appellees Real Builders, Inc.; Joel J. Feist, individually and as Managing Partner of 26th Street Hospitality, LLP; and Joeleon Holdings, LLP.

KAPSNER, Justice.

[¶ 1] 26th Street Hospitality, LLP ("Partnership") appeals from the district court's order granting a motion to compel arbitration; order lifting a stay in the proceedings, confirming the arbitration award, and awarding post-judgment interest; and final judgment. The Partnership argues the district court erred in ordering arbitration because the court was required to determine the validity of the contract before arbitration could be ordered and not all of the claims and parties were subject to arbitration. We affirm.

## I

[¶ 2] The Partnership was created to acquire, build, own, and operate a hotel in Williston. In 2011, the partners signed the Partnership Agreement setting the terms and conditions of their agreement. Joeleon Holdings was one of the partners, and Joel Feist signed the Partnership Agreement on behalf of Joeleon Holdings. Feist was a managing partner of Joeleon Holdings and was named one of the Partnership's managing partners. Feist was also the President and principal owner of Real Builders, Inc., which provided construction services to the Partnership for the construction of the hotel.

[¶ 3] In November 2013, the Partnership sued Joeleon Holdings, Feist, and Real Builders (collectively "Feist defendants"). The Partnership alleged that Feist, on behalf of the Partnership, entered into a construction contract with Real Builders, that Feist signed the contract on behalf of both the Partnership and Real Builders, and that the construction contract was invalid because it was executed without the knowledge and authority of the Partnership or a majority of the partners or managing partners as the Partnership Agreement requires. The Partnership requested the district court declare the construction contract invalid and sought damages for numerous claims, including breach of contract, negligence, fraud, conversion, unjust enrichment, and breach of statutory and other duties.

[¶ 4] The Feist defendants answered and counterclaimed, seeking damages for claims of breach of contract and unjust enrichment. The Feist defendants also moved to stay proceedings and for an order compelling arbitration, arguing arbitration of any dispute was required under the Partnership Agreement.

[¶ 5] After a hearing, the district court granted the Feist defendants' motion compelling arbitration, concluding the Partnership Agreement contained a general arbitration clause requiring arbitration for "any claim or controversy arising out of or relating to" the Partnership Agreement, the Partnership's complaint contained allegations related to or arising out of the Partnership Agreement, and arbitration was required under the arbitration clause of the Partnership Agreement. The court stated aspects of the litigation that cannot be resolved in arbitration would be stayed pending resolution of the arbitration.

[¶ 6] The Partnership moved for clarification or reconsideration, arguing the court should clarify which claims and parties were subject to arbitration, which claims were stayed pending arbitration, and whether nonsignatory, nonparty strangers to the Partnership Agreement can have their claims arbitrated without a separate arbitration agreement. After a hearing, the district court denied the Partnership's request, ruling arbitration was ordered and anything that cannot be arbitrated was stayed pending the ordered arbitration.

[¶ 7] Arbitration proceedings were completed, and an arbitration award was entered. The arbitrator found Feist had actual and inherent authority as a managing partner to enter into the construction contract with Real Builders for construction of the hotel and awarded the Feist defendants $681,687.78 in damages and $253,144.23 in interest for the period of February 16, 2013, to March 11, 2015. The arbitrator awarded the Partnership $576,757.95 in damages for its claims against the Feist defendants.

[¶ 8] The Partnership moved for entry of judgment on the arbitration award. The Feist defendants responded, arguing judgment should be entered only after the stay was lifted and the arbitration award was confirmed. They further requested

that the court's judgment reflect that all claims and counterclaims in the litigation between the Partnership and Feist defendants were fully resolved in arbitration and that the court award eighteen percent post-judgment interest. The Feist defendants later moved for an order lifting the stay and confirming the arbitration award, entering judgment, and awarding post-judgment interest.

[¶ 9] The district court entered an order lifting the stay, confirming the arbitration award, entering judgment, and awarding post-judgment interest. The court ruled the arbitration award fully resolved all of the claims and counterclaims between the Partnership and Feist defendants and no claims remained outstanding. The court ordered post-judgment interest at a rate of eighteen percent per annum because the arbitrator determined that to be the contractual rate of interest. A judgment dismissing the action with prejudice was entered.

## II

[¶ 10] The Partnership argues the district court erred in granting the motion to compel arbitration because the court, rather than an arbitrator, should have determined whether the construction contract was valid, some of the claims were not subject to arbitration under the arbitration clause of the Partnership Agreement, and Real Builders was not a party to the Partnership Agreement.

[¶ 11] An order granting a motion to compel arbitration is reviewed de novo on appeal, unless the district court's decision was based on factual findings, which will only be reversed on appeal if they are clearly erroneous. *See Schwarz v. Gierke*, 2010 ND 166, ¶ 11, 788 N.W.2d 302. In this case, the district court's decision does not rest upon any factual findings; rather, it is based on the court's

interpretation of the Partnership Agreement. The interpretation of a written contract to determine its legal effect is a question of law, which is fully reviewable on appeal. *Id.* We have summarized the rules for construing contracts:

> Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9–07–03; *Lire; [Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433–34 (N.D.1995) ]. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Lire*, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9–07–06; *Lire*, at 434.... Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. N.D.C.C. § 9–07–09. If the parties' intention in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Ohio Farmers Ins. Co. v. Dakota Agency, Inc.*, 551 N.W.2d 564, 565 (N.D.1996).

*State ex rel. Stenehjem v. Philip Morris, Inc.*, 2007 ND 90, ¶ 14, 732 N.W.2d 720 (quoting *Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 10, 599 N.W.2d 261).

## A

[¶ 12] The Partnership claims that the construction contract was fraudulently entered into and that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and North Dakota's Uniform Arbitration Act, N.D.C.C. ch. 32–29.3, require the court, not an arbitrator, determine the validity of the contract before arbitration can be ordered.

[¶ 13] Under the FAA, "[a] written provision in ... a contract evidenc-

ing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2; *see also Superpumper, Inc. v. Nerland Oil, Inc.*, 1998 ND 144, ¶ 14, 582 N.W.2d 647 (the FAA makes arbitration agreements valid, irrevocable, and enforceable). Upon the application of one of the parties, the court shall stay any suit or proceeding brought on an issue referable to arbitration under an arbitration agreement. 9 U.S.C. § 3. A party aggrieved by the failure or refusal of another to arbitrate under a written arbitration agreement may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA applies in both federal and state courts. *See Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Superpumper*, at ¶ 14. The FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (citations omitted).

[¶ 14] The FAA governs all written arbitration agreements in contracts involving interstate commerce. *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Superpumper*, 1998 ND 144, ¶ 14, 582 N.W.2d 647. The term "involving commerce" has been interpreted as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). The FAA provides for enforcement of agreements within the full reach of the Commerce Clause and "encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" *Id.*

[¶ 15] Both parties argue the FAA applies and they do not dispute the Partnership Agreement involves interstate commerce. The partners are located in North Dakota, Indiana, and Ohio. The Partnership Agreement called for cash or other contributions by each partner at the time of the formation of the partnership, which involved the transfer of money between the states. *Cf. Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790–91 (8th Cir.1998) (holding a franchise agreement involved interstate commerce because the parties were located in different states and the agreement contemplates the transfer of inventory and money between the states). Furthermore, the Partnership Agreement evidenced a transaction involving commerce because it is inextricably tied to the Partnership's operation of a hotel, serving out-of-state guests. *Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding consulting agreement requiring advice and consultation in connection with a corporation's manufacturing operations and sales was a contract evidencing a transaction in interstate commerce because it was inextricably tied to the interstate transfer of operations and the continuing operations of an interstate business); *Williams v. Katten, Muchin & Zavis*, 837 F.Supp. 1430, 1437 (N.D.Ill. 1993) (holding law firm's partnership agreement evidence of a transaction involving commerce because firm maintained offices in several states). Because the written arbitration agreement in this case is in a contract involving interstate commerce the FAA applies.

[¶ 16] The Partnership argues arbitration was not appropriate and the court was

required under the FAA to determine whether the construction contract was valid before arbitration could be ordered. The Partnership contends the FAA and North Dakota's Uniform Arbitration Act require the court provide a summary judicial forum to determine the validity of the construction contract because there was undisputed evidence of fraud.

[¶ 17] Section 2 of the FAA states that an agreement "to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA states, "If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The United States Supreme Court has interpreted these provisions of the FAA and explained when a court is required to decide the validity of an agreement before ordering arbitration:

There are two types of validity challenges under § 2: "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye [Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)]. In a line of cases neither party has asked us to overrule, we held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404 [87 S.Ct. 1801, 18 L.Ed.2d 1270] (1967); *Buckeye,* [at 444–46, 126 S.Ct. 1204]; *Preston v. Ferrer,* 552 U.S. 346,

353–354 [128 S.Ct. 978, 169 L.Ed.2d 917] (2008). That is because § 2 states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye,* [at 445, 126 S.Ct. 1204].

But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4. In *Prima Paint,* for example, if the claim had been "fraud in the inducement of the arbitration clause itself," then the court would have considered it. 388 U.S. at 403–404 [87 S.Ct. 1801].... [Even] where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract— we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.

*Rent–A–Center,* 561 U.S. at 70–71, 130 S.Ct. 2772.

[¶ 18] Our prior case law is consistent with the Supreme Court's ruling in *Rent–A–Center.* In *David v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 440 N.W.2d 269, 270–71 (N.D.1989), a customer of a commodity trading corporation sued the corporation claiming he was fraudulently induced to enter into an arbi-

tration agreement, the corporation moved to compel arbitration, and the district court decided the customer's fraud-in-the-inducement claim before ordering arbitration. On appeal, this Court affirmed the district court's decision, holding the customer's fraud-in-the-inducement claim failed because the corporation's actions did not amount to fraud or deceit as a matter of law. *Id.* at 274. The Partnership argues this case supports its claim that the court is required to determine the validity of an agreement before ordering arbitration. However, in *David,* the customer argued he was fraudulently induced to enter into the arbitration agreement itself, and he did not claim he was fraudulently induced to enter into the entire commodity account agreement. *Id.* at 270, 273–74. Our decision in *David* does not support the Partnership's argument that a court must decide the validity of a contract before arbitration can be ordered, when the entire contract is challenged rather than the arbitration agreement specifically.

[¶ 19] The Feist defendants requested and the district court ordered arbitration based on the arbitration clause of the Partnership Agreement, and the Partnership did not challenge the validity of that clause. The Partnership claims the construction contract was fraudulent. The construction contract also contains an arbitration clause, but arbitration was not ordered under the arbitration provision of the construction contract. Furthermore, the Partnership did not specifically claim the arbitration clause of the construction contract was invalid. The district court did not err in refusing to decide the Partnership's claims related to the formation of the construction contract before ordering arbitration. To the extent the Partnership claims the North Dakota Uniform Arbitration Act would require the court determine the validity of the construction contract before ordering arbitration, we do not

need to address that issue because the FAA preempts conflicting state law. *See Superpumper,* 1998 ND 144, ¶ 15, 582 N.W.2d 647 (stating the North Dakota Uniform Arbitration Act is preempted by the FAA insofar as it impedes the accomplishment and execution of the full purposes and objectives of the FAA); *see also Volt,* 489 U.S. at 477, 109 S.Ct. 1248.

### B

[¶ 20] The Partnership argues arbitration was not appropriate for its construction related claims, equitable claims, and fraud claims because those claims are related to the construction contract and are not within the scope of the arbitration clause of the Partnership Agreement. The Partnership contends it was not the intention of the parties to the Partnership Agreement to arbitrate the types of claims the Partnership is pursuing.

[¶ 21] We have recognized a strong state and federal policy favoring the arbitration process, and we resolve any doubts concerning the scope of arbitrable issues in favor of arbitration when there is a broad arbitration clause and no limitations or exclusions. *Schwarz,* 2010 ND 166, ¶ 11, 788 N.W.2d 302. The FAA also evinces a liberal policy favoring arbitration agreements. *Id.* at ¶ 13. "Before a party may be compelled to arbitrate under the FAA, a court must determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement." *Id.* (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 427–28 (Mo.2003)). A court must compel arbitration if the parties agreed to arbitrate the dispute. *Schwarz,* at ¶ 13.

[¶ 22] The arbitration clause of the Partnership Agreement states:

Unless otherwise provided in this Agreement, any claim or controversy arising out of or relating to this Agreement, or a breach of it, shall, upon the request of any party involved, be submitted to and settled by arbitration in accordance with the rules of the American Arbitration Association (or any other form of arbitration mutually acceptable to the parties involved) then obtaining in the State of North Dakota. The decision make [sic] pursuant to such arbitration shall be binding and conclusive on all parties involved; and judgment upon such decision may be entered in the highest court of any forum, Federal or state, having jurisdiction.

This arbitration provision is broad and does not contain any specific exclusions. *See Schwarz*, 2010 ND 166, ¶¶ 17–19, 788 N.W.2d 302 (stating a broad arbitration provision covers all disputes arising out of a contract).

[¶ 23] "The question whether the parties have submitted a particular dispute to arbitration, i.e., the *'question of arbitrability,'* is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *AT & T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citations omitted). State law principles governing the formation of contracts apply in deciding whether the parties agree to arbitrate a certain matter,

but "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944, 115 S.Ct. 1920.

[¶ 24] The arbitration provision in the Partnership Agreement states, "[A]ny claim or controversy arising out of or relating to this Agreement, or a breach of it, shall, upon the request of any party involved, be submitted to and settled by arbitration in accordance with the rules of the American Arbitration Association...." The arbitration agreement expressly incorporates the rules of the American Arbitration Association ("AAA"). Rule 7(a) of the AAA Commercial Arbitration Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." In cases with similar arbitration clauses incorporating the AAA rules, other courts have held the incorporation of the AAA rules constitutes clear and unmistakable evidence the parties agreed to arbitrate arbitrability. *See, e.g., Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir.2015); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir.2014); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir.2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir.2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed.Cir.2006); *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir.2005).

[¶ 25] The incorporation of the AAA Rules is clear and unmistakable evidence the parties agreed to arbitrate the question of arbitrability. Under the facts and circumstances of this case, we conclude the parties agreed the question of arbitrability of each claim was for the arbi-

trator to decide and the court did not err in ordering arbitration and denying the Partnership's motion to clarify which claims were subject to arbitration.

### C

 [¶ 26] The Partnership argues the district court erred in ordering arbitration of its claims against Real Builders. The Partnership contends its claims against Real Builders could not be subject to arbitration under the Partnership Agreement because Real Builders was not a partner and, therefore, was not a party to the agreement.

 [¶ 27] Background principles of state contract law control the interpretation of the scope of an arbitration agreement, including who is bound by the agreement, and traditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). If state law makes an agreement to arbitrate enforceable by a nonsignatory, the nonsignatory is entitled to request and obtain a stay and an order to compel arbitration. *Id.* at 630–32, 129 S.Ct. 1896.

[¶ 28] This Court has recognized the scope of an arbitration provision may be extended to a nonsignatory, third-party beneficiary. *See David*, 440 N.W.2d at 275 (stating brokers and brokerage firms can be third-party beneficiaries of an arbitration agreement); *Schwarz*, 2010 ND 166, ¶ 25, 788 N.W.2d 302. We have said, "Nonsignatories to a contract containing an arbitration clause may be deemed parties thereto, through ordinary contract and agency principles, for purposes of the Federal Arbitration Act." *David*, at 275.

[¶ 29] The Feist defendants do not contend Real Builders was a third-party beneficiary of the Partnership Agreement, but they argue a nonsignatory can invoke the protections of an arbitration clause when a signatory to the agreement raises allegations of substantially interdependent and concerted misconduct by the nonsignatory and one or more signatories to the agreement. This Court has never specifically addressed whether the equitable or alternative estoppel doctrine may be applied to allow a nonsignatory to compel arbitration.

 [¶ 30] Other courts have held the doctrine of equitable estoppel, also called alternative estoppel, may allow a nonsignatory to compel arbitration in at least two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (quotations and citations omitted), *abrogated on other*

grounds by *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009); *see also Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir.2013); *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 373 (4th Cir.2012); *PRM Energy Sys., Inc. v. Primenergy, L.L.C.,* 592 F.3d 830, 834–35 (8th Cir.2010); *Grigson v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 527 (5th Cir.2000); *Meister v. Stout,* 2015 COA 60, ¶¶ 12–15, 353 P.3d 916; *Douzinas v. Am. Bureau of Shipping, Inc.,* 888 A.2d 1146, 1153 (Del.Ch. 2006); *Marshall, Amaya & Anton v. Arnold–Dobal,* 76 So.3d 998, 1004 (Fla.Dist. Ct.App.2011); *Order Homes, LLC v. Iverson,* 300 Ga.App. 332, 685 S.E.2d 304, 310 (2009); *Luke v. Gentry Realty, Ltd.,* 105 Hawai'i 241, 96 P.3d 261, 268 (2004); *German Am. Fin. Advisors & Trust Co. v. Reed,* 969 N.E.2d 621, 628 (Ind.Ct.App. 2012); *Machado v. System4 LLC,* 471 Mass. 204, 28 N.E.3d 401, 409 (2015); *Sawyers v. Herrin–Gear Chevrolet Co., Inc.,* 26 So.3d 1026, 1038–39 (Miss.2010); *High Sierra Energy, L.P. v. Hull,* 2011 OK CIV APP 77, ¶¶ 22–23, 259 P.3d 902; *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 305–06 (Tex.2006); 21 Richard A. Lord, *Williston on Contracts,* § 57:19, at 189 (4th ed.2001). "[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bailey v. ERG Enters., LP,* 705 F.3d 1311, 1320 (11th Cir. 2013).

[¶ 31] We find these cases are persuasive. Applying the doctrine in this case is consistent with our prior arbitration cases. *See Schwarz,* 2010 ND 166, ¶ 25, 788 N.W.2d 302 (holding third-party beneficiaries of an agreement cannot base their action on a purported duty a party owed under the agreement and, at the same time, disavow the extent of the relationship between the parties to the agreement to avoid the arbitration provision). It is also consistent with the public policy favoring arbitration when there is a broad arbitration clause and no specific exclusions.

[¶ 32] In its fraud claim against Real Builders and Feist, the Partnership alleged:

> [Real Builders] and/or Feist, and/or jointly, knowingly, wrongfully and intentionally entered into the Invalid Contract, in secret, outside the scope of authority, and without the required Partnership knowledge or approval, which actions were not in the Partnership's interests or best interests. [Real Builders] and/or Feist, and/or jointly, without notice to or authority of the Partnership entered into the Invalid Contract for the sole purpose of improperly putting themselves in a more favorable and lucrative position at the expense of the Partnership.

The Partnership's request that the court declare the construction contract invalid and unenforceable also contains similar allegations. The Partnership further alleged:

> The Invalid Contract was executed without the requisite knowledge and authority of the Partnership and/or without the requisite knowledge and authority of a majority of the partners and/or managing partners of the Partnership, as is required by the 26th Street Hospitality, LLP Limited Liability Partnership Agreement ("Partnership Agreement") and by the applicable North Dakota law. Therefore, it is not an arm's length transaction, was entered into fraudulently, beyond the scope of Feist's authority and/or agency, and is otherwise in derogation of Feist's fiduciary and other contractual and statutory duties as a Partner and Managing Partner of the Partnership.

All of the Partnership's claims relate to or would be affected by the outcome of its claim that the construction contract is invalid.

[¶ 33] The Partnership's claims against Feist and Real Builders are based on the same facts and are inseparable. *See MS Dealer*, 177 F.3d at 948. The Partnership specifically alleges concerted misconduct between Feist and Real Builders and the claims are intertwined with Feist's power or authority under the Partnership Agreement. *See PRM*, 592 F.3d at 835. It would be inequitable to allow the Partnership to rely on the Partnership Agreement in formulating its claims but to disavow the availability of the arbitration provision of that same agreement because Real Builders was not a signatory to the agreement. *See id.* The district court did not err in granting the Feist defendants' motion to compel arbitration.

### III

[¶ 34] The Partnership also argues the district court erred in awarding eighteen percent judgment interest based on an interest provision in the construction contract. The Partnership contends a six and a half percent rate applies under N.D.C.C. § 28-20-34 because the construction contract was not the original instrument upon which the action resulting in the judgment was based, arbitration was ordered based on the Partnership Agreement, and the Partnership Agreement does not provide for any interest.

[¶ 35] Section 28-20-34, N.D.C.C., states, "Interest is payable on judgments entered in the courts of this state at the same rate as is provided in the original instrument upon which the action resulting in the judgment is based. . . ." Although the Partnership Agreement was the basis of the district court's order for arbitration, the arbitrator awarded the Feist defen-

dants damages for their claims under the construction contract. The construction contract states payments due and unpaid under the contract shall bear interest from the date payment is due at a rate of one and a half percent monthly. The arbitrator awarded the Feist defendants damages based on the construction contract and interest on the contractual damages for February 16, 2013, to March 11, 2015, at the rate the construction contract required. We conclude the district court did not err in awarding eighteen percent postjudgment interest.

### IV

[¶ 36] The district court orders and judgment are affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.