John V. BREAKER, Plaintiff–Appellant,

and

Sara D. Breaker and Elizamy, Inc., a dissolved Colorado corporation, Third–Party Defendants–Appellants,

v.

CORROSION CONTROL CORPORATION, a Colorado corporation, Defendant and Third–Party Plaintiff–Appellee.

No. 00CA0420.

Colorado Court of Appeals,
Div. II.

April 12, 2001.

Isaacson, Rosenbaum, Woods & Levy, P.C., Theresa L. Corrada, Denver, CO, for Plaintiff–Appellant and Third–Party Defendants–Appellants.

Brega & Winters, P.C., James W. Bain, Denver, CO, for Defendant and Third–Party Plaintiff–Appellee.

Opinion by Judge CRISWELL. *

Plaintiff, John V. Breaker, and two counterclaim defendants, Sara D. Breaker and Elizamy, Inc., a dissolved Colorado corporation (Elizamy), appeal, pursuant to § 13–22–

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.2000.

221(1)(a), C.R.S.2000, from the order of the trial court that denied their motion to compel arbitration of certain counterclaims asserted against them by defendant, Corrosion Control Corporation (CCC). We affirm in part, reverse in part, and remand for further proceedings.

The record discloses the following undisputed facts.

In 1991, Elizamy was in the business of designing and manufacturing specialized flanges and other gaskets and distributing and marketing such products in this and other states. In September of that year, CCC entered into an agreement (the purchase agreement) with Elizamy and plaintiff, Elizamy's principal stockholder, pursuant to which Elizamy agreed to transfer to CCC all of its assets. Plaintiff was made a party to this agreement to reflect that he had personally made certain representations and warranties to CCC and to bind him to certain obligations respecting the future receipt by Elizamy or by him of capital stock in CCC. By the purchase agreement, neither plaintiff nor Elizamy made any express agreement not to disclose information respecting Elizamy's or CCC's business to other parties.

In addition, this agreement obligated CCC to enter into an employment agreement with plaintiff in substantially the same form as a document attached to the purchase agreement.

The purchase agreement also provided that:

> Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration before a single arbitrator chosen by [CCC] and [Elizamy]. The arbitration shall be conducted in accordance with the Uniform Arbitration Act of 1974 [Section 13–22–201, et seq., C.R.S.2000]. . . .

After this purchase agreement was executed, plaintiff and CCC entered into an employment agreement whereby CCC employed plaintiff for a period of five years and agreed to pay him a salary plus a royalty upon the sales of certain products. By this agreement, plaintiff agreed, among other things, that he would not, during the term of that agreement, "impart any information relative to the business or affairs of [CCC] to anyone," except to certain of CCC's employees.

The employment agreement contained no express provision referring to arbitration. Rather, it provided that "any action, special proceeding, or other proceeding . . . arising out of, in connection with, or by reason of" that agreement was to be governed by Colorado law and that:

> The venue for any action brought by either party against the other shall be in the District Court in and for the City and County of Denver, State of Colorado, and any other venue is hereby waived.

This employment agreement also contained a provision acknowledging that its terms constituted:

> the complete agreement between the parties and shall, as of the effective date hereof, supersede all other agreements between the parties.

In 1994, more than two years later, CCC, plaintiff, and Elizamy entered into a further agreement (the 1994 agreement). Under this agreement, CCC consented to plaintiff's employment by another party; plaintiff's nondisclosure obligation created by the employment agreement was reaffirmed; and Elizamy and plaintiff waived their rights under the purchase agreement to receive shares of CCC's capital stock. This agreement made no express reference to any arbitration obligation. It did, however, provide that "the exclusive jurisdiction and venue for any action brought under this agreement will be the District Court of Denver County, Colorado."

Plaintiff commenced this action in December 1998. His complaint made reference to the purchase agreement only to note that the employment agreement between CCC and himself was entered into as a condition of the sale of Elizamy's assets; he placed no reliance upon any provision of the purchase agreement to support his claim. Rather, he attached a copy of the employment agreement to his complaint and alleged, simply, that CCC had violated that agreement by failing to pay him royalties due.

In CCC's initial responsive pleading, it, likewise, placed no reliance upon any provision of the purchase agreement. It attached a copy of the employment agreement and of the 1994 agreement to this pleading and asserted, as a counterclaim, that plaintiff had violated these two agreements by disclosing confidential information to an identified third party. It also alleged, as a second counterclaim, that plaintiff had improperly interfered with an advantageous business relationship that CCC had developed with that same identified third party.

Thereafter, both parties engaged in discovery efforts. However, the precise results of those efforts had not been presented to the trial court at the time it entered the order that is the subject of this appeal. Those results, therefore, form no proper part of the record before us.

CCC later alleged that it had discovered information during the deposition of another counterclaim defendant (Kohn) that caused it to conclude that certain representations and warranties made by plaintiff and Elizamy as a part of the purchase agreement were untrue. With leave of court, it joined Kohn and the other two counterclaim defendants and asserted several counterclaims.

First, it re-alleged, in essence, its two original counterclaims against plaintiff for violation of the employment agreement by disclosing confidential information to a third party and tortious interference with CCC's relationship with that party.

Next, invoking both the common law and the deceptive trade practices statute, § 6–1–105, C.R.S.2000, CCC asserted three claims against plaintiff and Elizamy, based upon their alleged false representations and fraudulent nondisclosures relating to certain patent rights that Elizamy had transferred to CCC pursuant to the purchase agreement.

Further, it alleged that plaintiff and Kohn had interfered with relationships between CCC and certain of its customers and that they had disclosed CCC's trade secrets in violation of the Uniform Trade Secrets Act, § 7–74–101, et seq., C.R.S.2000.

In addition, CCC also alleged, generally, that plaintiff, Elizamy, and Kohn had unlawfully conspired to accomplish an unlawful goal through unlawful means (although neither the goal nor the means was specified).

Finally, Sara D. Breaker was joined as a counterclaim defendant, and it was alleged that plaintiff and she, as stockholders, had received assets of Elizamy upon its dissolution, and to the extent of the value of those assets, both were liable for Elizamy's debts under § 7–114–108, C.R.S.2000.

As relief, CCC sought actual damages, exemplary damages, declaratory relief, and an injunction against further improper disclosure of confidential information.

When CCC filed these additional counterclaims, plaintiff and the counterclaim defendants sought to arbitrate the claims arising under, or related to, the purchase agreement, but not those arising under the employment agreement.

In denying this request, the trial court held that the arbitration provision in the purchase agreement was "broad enough" to cover any claims under the employment agreement (and presumably under the 1994 agreement, as well), but that plaintiff had waived his right to arbitrate any claim by failing to raise the issue sooner and by participating in extensive discovery before asking for arbitration.

Plaintiff and the two counterclaim defendants contend the arbitration provisions of the purchase agreement do not extend to issues implicating only the employment agreement; that the parties' initial pleadings implicated no factual or legal issue that arose under or related to the purchase agreement; and that the court therefore erred in determining that they had waived their right to demand arbitration of CCC's counterclaims that raised issues arising under, or relating to, the purchase agreement. We agree.

## I.

It is undisputed that any claim that Elizamy violated the purchase agreement is subject to that agreement's arbitration requirement. Likewise, there is no assertion that Sara D. Breaker is liable to CCC unless Elizamy is liable to it. Her liability is solely

derivative in nature, based upon the distribution to her of certain assets of Elizamy.

Further, there is no suggestion in the record that Elizamy waived *its* right to demand arbitration. The trial court's determination that there had been a waiver was based solely upon plaintiff's participation in the initial stages of the litigation, including discovery efforts.

The initial claims and counterclaims related solely to the employment agreement to which Elizamy was not a party. They were asserted against plaintiff in his individual capacity only, and Elizamy had not been named as a party to the litigation at that stage. Upon CCC's joinder of Elizamy as a counterclaim defendant, Elizamy immediately demanded that the counterclaims against it be submitted to arbitration, and it took no actions inconsistent with such a demand.

Clearly, therefore, to the extent that the counterclaims against Elizamy constitute disputes to which the purchase agreement's arbitration clause applies (an issue we consider below), Elizamy is entitled to arbitrate those counterclaims, unless that right can be denied by application of the "intertwining" doctrine (also considered below).

■ Sara D. Breaker is not a party to any of the relevant agreements. Accordingly, she is not entitled to require CCC to arbitrate the counterclaim against her. However, because her liability is wholly derivative of Elizamy's, legal action on the counterclaim against her should be stayed pending completion of any arbitration proceedings to determine Elizamy's liability. *See City & County of Denver v. District Court*, 939 P.2d 1353 (Colo.1997); *Youmans v. District Court*, 197 Colo. 28, 589 P.2d 487 (1979).

## II.

■ Because the parties' initial claims and counterclaims implicated only the employment agreement, and the discovery and other pretrial activities presumably involved only these claims, plaintiff could have waived his right to arbitrate any counterclaim arising under or relating to the purchase agreement only if that agreement required the parties to arbitrate any dispute arising under or relat-

ing to the separate employment agreement. Indeed, it was only upon this basis that the trial court concluded that plaintiff had waived the right to arbitrate issues relating to the purchase agreement. We conclude, however, that the arbitration provision in the purchase agreement does not extend to disputes arising under the employment agreement.

■ Arbitration is a favored policy in Colorado. *Huizar v. Allstate Insurance Co.*, 952 P.2d 342 (Colo.1998). Hence, when presented with an agreement to arbitrate specified disputes, all doubts should be resolved in favor of the claim's arbitrability. *Jefferson County School District No. R–1 v. Shorey*, 826 P.2d 830 (Colo.1992). This is particularly true when, as here, the arbitration clause extends to disputes that "relate to" the contract in which it is found. *City & County of Denver v. District Court, supra.*

■ However, an agreement to arbitrate is subject to the same ordinary principles of contract construction as are other contractual provisions. *Gergel v. High View Homes, LLC*, 996 P.2d 233 (Colo.App.1999). The primary goal is to give effect to the parties' expressed intent. *Austin v. U S West, Inc.*, 926 P.2d 181 (Colo.App.1996). Ultimately, the parties' reasonable expectations must determine the reach of the arbitration obligation. *City & County of Denver v. District Court, supra.*

Here, the only provision for arbitration is in the purchase agreement, and that provision required arbitration of claims "arising out of or relating to *this* agreement." (emphasis supplied) The purchase agreement contemplated a further, separate employment agreement between plaintiff and CCC, but the arbitration provision made no reference to any disputes arising out of or relating to that agreement.

Further, the employment agreement made no reference to arbitration. On the contrary, it contained provisions requiring "actions" by either party to be filed with the Denver District Court—a provision that is absent from the purchase agreement.

While the purchase agreement incorporated certain representations made by plaintiff

in the employment agreement, there is no indication that the employment agreement incorporated any term of the purchase agreement. Instead, the employment agreement provided that its terms constituted the "complete agreement" between the parties.

In addition, the subjects covered by each agreement are different. The purchase agreement required the transfer of assets by Elizamy to CCC, contained representations and warranties by plaintiff and Elizamy with reference to those assets, and called for CCC's execution of a promissory note, but gave Elizamy the right to convert note payments into capital stock of CCC. This agreement had no express restriction upon the release of information concerning either Elizamy's or CCC's business.

The employment agreement, on the other hand, spoke only to the future relationship between plaintiff, as an employee and consultant, and CCC. It outlined plaintiff's duties as an employee, including his obligation not to disclose to third parties confidential information relating to Elizamy or CCC, and established plaintiff's compensation.

Given the relationship among the three parties, these two agreements could have been expressed in a single contractual document. However, the fact that the parties chose to execute two separate agreements emphasizes that their mutual intent was to treat the obligations established by each separately. The two documents disclose an intent to have disputes arising under the two contracts resolved by separate tribunals—an arbitrator for disputes under the purchase agreement, and the courts for those under the employment agreement.

This intent is confirmed by the parties' actions in this litigation. Plaintiff's complaint sought compensation allegedly due under the employment agreement, and he made no demand for arbitration of this claim. CCC, likewise, did not contest the court's jurisdiction over that claim. CCC's original counterclaim asserted a claim for breach of the employment agreement's restriction against disclosure of information, and neither CCC nor plaintiff asserted that this claim had to be arbitrated. It was only at a much later date, when CCC asserted counterclaims clearly related to the purchase agreement, that the demand for arbitration was made.

Given the foregoing circumstances, then, we conclude that a claim or counterclaim that implicates only the employment agreement is not arbitrable and that plaintiff's participation in litigation of such claims could not, as a matter of law, constitute a knowing waiver of his right to require arbitration of other claims that arise out of or relate to the purchase agreement.

### III.

We must, therefore, determine which of CCC's counterclaims implicate the rights and obligations under the purchase agreement and are, accordingly, arbitrable.

In making this determination under a broad "relating to" arbitration provision, the focus is not on whether the claim sounds in contract or in tort. Rather, the focus must be upon the factual basis for the claim, not upon the legal theory espoused. *City & County of Denver v. District Court, supra.* If the factual basis implicates the rights and obligations created by a particular agreement, even a statutory claim may be determined to be one that relates to that agreement. *See Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511 (10th Cir.1995).

Here, the various counterclaims asserted by CCC fall within three general categories.

First, CCC asserted that plaintiff and Elizamy made misrepresentations and fraudulent nondisclosure of facts concerning the patent rights transferred to CCC. These claims, although based, in part, upon the deceptive trade practices statute, as well as the common law, all relate to the representations and warranties contained in the purchase agreement. These claims, therefore, are arbitrable under that agreement.

Second, CCC alleged that both plaintiff and Elizamy disclosed confidential information to third parties. With respect to Elizamy, this counterclaim must arise under or relate to the purchase agreement. While it was a party to the 1994 agreement, any restriction against disclosure of information

by Elizamy must be grounded upon some express or implied obligation of the purchase agreement. These claims against Elizamy are, therefore, arbitrable.

■ The same, however, cannot be said for the counterclaims against plaintiff that assert his improper disclosure of information. The purchase agreement placed no restriction upon him with respect to information disclosure; only the employment agreement did so. And this restriction was again emphasized in the 1994 agreement. Because neither of these agreements contained an arbitration provision, we conclude that these counterclaims against plaintiff are not arbitrable.

■ The third category of CCC's counterclaims alleged that plaintiff and Kohn had tortiously interfered with CCC's relationships with various third parties. We see nothing in these allegations that relates to the purchase agreement. To the extent that they implicate any of the relevant agreements, they may have some connection with plaintiff's obligation under the employment agreement and the 1994 agreement not to disclose confidential information and not to compete against CCC. In any event, we see no connection between the factual allegations underlying these counterclaims and any obligation assumed by plaintiff under the purchase agreement. These counterclaims are, therefore, not arbitrable.

In sum, we conclude that all of CCC's counterclaims against Elizamy are arbitrable, as are the counterclaims against plaintiff that are based upon his alleged misrepresentations and nondisclosures. None of the other counterclaims against plaintiff arises under or relates to the purchase agreement, however. Accordingly, none of these other counterclaims is arbitrable.

### IV.

■ CCC contends that, even if some of its counterclaims are arbitrable and the right to arbitrate has not been waived, nevertheless, because they are joined with claims that are related but not arbitrable, the "intertwining" doctrine prevents their arbitration. In contrast, plaintiff and Elizamy contend that,

because the purchase agreement evidences a transaction in interstate commerce, the obligation to arbitrate is governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., which precludes application of the intertwining doctrine to deny enforcement of a contractual right to arbitrate. CCC recognizes that the intertwining doctrine cannot be applied to a contract that is governed by the FAA, but argues that by making specific reference to the Uniform Arbitration Act in the arbitration provision of the purchase agreement, the parties have exempted their arbitration obligation from the application of the FAA.

Even if we assume that the FAA is not applicable to the purchase agreement, we conclude that the intertwining doctrine cannot be applied to deny Elizamy or plaintiff the right to arbitrate the counterclaims that we have determined to be arbitrable.

The intertwining doctrine was first recognized by the Colorado Supreme Court in *Sandefer v. District Court*, 635 P.2d 547 (Colo.1981). In doing so, the court referred to several federal appellate decisions under the FAA that had held that, if the factual and legal issues to be reviewed by the arbitrator are "inextricably intertwined" with those of the claims to be decided by the court, severance might result in the arbitrator deciding issues that properly should be left to the judiciary. The court concluded, therefore, that, if an arbitrable claim is joined with claims that are not arbitrable, and if the arbitrator were required to review the same facts needed to establish the nonarbitrable claims, referral to arbitration should be denied, and the court should resolve all of the claims asserted.

However, several years after the *Sandefer* opinion was issued, the United States Supreme Court referred to the decisions relied upon in *Sandefer* and rejected their analyses. Rather, the Court concluded that the FAA prevented the application of the intertwining doctrine to deny arbitration of otherwise arbitrable claims. The Court noted that the possible efficiencies to be gained by having one forum, rather than two, pass upon common factual or legal issues could not justify refusing to enforce an agreement to arbitrate

as decreed by Congress. It also noted that the award entered by the arbitrator would not necessarily be binding upon the court's resolution of the same issues, and there was, therefore, no reason to stay the arbitration proceedings pending completion of the litigation. Hence, the Court concluded that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158, 163 (1985).

■ If the FAA applies, therefore, the intertwining doctrine cannot be applied to preclude arbitration under the purchase agreement.

However, the Supreme Court has also determined that, at least in certain respects, parties to an arbitration agreement may elect to have inconsistent state law applied to that agreement, rather than the FAA. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). And, while it is not entirely clear the extent to which a private agreement may make the FAA inapplicable, *see Ackerberg v. Johnson,* 892 F.2d 1328 (8th Cir.1989), we will assume, without deciding, that the parties here, by their reference to the state statute, could and did make the intertwining doctrine applicable to disputes arising out of the purchase agreement. Nevertheless, we conclude that that doctrine does not prevent arbitration of the arbitrable counterclaims alleged here.

■ First, we reject the notion that that doctrine allows a defendant, by filing a permissive counterclaim and joining a third party defendant, to defeat that third party's right to have the counterclaim arbitrated. Here, CCC need not have filed a claim against Elizamy for fraud under the purchase agreement in response to plaintiff's suit for compensation under the employment agreement. But, having done so, the existence of other counterclaims against other parties could not defeat Elizamy's right to arbitrate. Under such circumstances, the arbitrator's determination of Elizamy's liability would not be binding on the court in passing upon CCC's counterclaims against plaintiff.

■ Further, the intertwining doctrine is to be applied only if there are common issues between arbitrable and nonarbitrable claims. Here, we conclude that there are no such common issues.

■ The claims that we have concluded must be arbitrated under the purchase agreement relate either to plaintiff's or Elizamy's alleged misrepresentations or fraudulent nondisclosures respecting the property transferred to CCC under the purchase agreement or *Elizamy's* liability under the *purchase agreement* for its alleged disclosure of information. The nonarbitrable claims, in contrast, relate either to events occurring long after any alleged misrepresentation or fraudulent nondisclosure or to *plaintiff's* liability under the *employment agreement* for disclosure of confidential information. Given the nature of the two categories of counterclaims, they present no common factual or legal issues. Hence, the intertwining doctrine cannot properly be applied to deny CCC's obligation to arbitrate.

The order denying arbitration of CCC's counterclaims against plaintiff based upon plaintiff's alleged disclosure of confidential information or upon his alleged tortious interference with CCC's relationship with third parties is affirmed. The order denying Elizamy's request to arbitrate all of the counterclaims asserted against it and plaintiff's request to arbitrate CCC's counterclaims against him based upon his alleged misrepresentations or fraudulent nondisclosure is reversed. The cause is remanded to the trial court for the entry of an order requiring arbitration of the counterclaims that we have determined to be arbitrable and staying all proceedings against Sara D. Breaker pending the arbitrator's award determining Elizamy's liability to CCC, and for such further proceedings as are consistent with the views set forth in this opinion.

Chief Judge HUME and Judge ROTHENBERG, concur.