2017 ND 204

**Gary KRAMLICH and Glory Kramlich, Plaintiffs, Appellants and Cross–Appellees**

**v.**

**Robert HALE and Susan Hale, Individually, Defendants, Appellees and Cross–Appellants**

**and**

**Somerset Court Partnership, LP, Somerset–Minot, LLC, Vision Management Services, LLC, and Bullwinkle Builders, LLC, Defendants**

No. 20160386

Supreme Court of North Dakota.

Filed 8/29/2017

Michael Ward, Minot, ND, for plaintiffs, appellants and cross-appellees.

Lynn M. Boughey, Bismarck, ND, for defendants, appellees and cross-appellants.

Crothers, Justice.

[¶ 1] Gary and Glory Kramlich appeal, and Robert and Susan Hale cross-appeal, from an order dismissing the Kramlichs' lawsuit against the Hales and various entities, and directing the parties to submit their disputes to binding arbitration. We conclude the district court correctly ordered arbitration of the Kramlichs' claims relating to the operating agreement for Somerset–Minot, LLC, but erred in ordering arbitration of claims relating to Somerset Court Partnership. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] Somerset Court Partnership owns the land on which an assisted living facility is located in Minot. Its partners include the Kramlichs and the Hales. The Kramlichs have a 25 percent interest in the partnership. The Hales have a 62 percent interest in the partnership. Somerset–Minot, LLC, formerly known as Spectrum Care, LLC, operates the facility. Its members include Gary Kramlich and Robert Hale, but not Glory Kramlich or Susan Hale. Robert Hale owns 2,850 and Gary Kramlich owns 950 of the LLC's 4,000 voting shares. The operating agreement for Somerset–Minot, then Spectrum Care, was executed on May 28, 1999, and contains an arbitration clause. The partnership agreement for Somerset Court was executed on July 24, 2000, and does not contain an arbitration clause.

[¶ 3] The Hales sought to buy out Gary Kramlich's shares in the LLC and the Kramlichs' interest in the partnership. The Kramlichs declined the offer and brought this action. The Kramlichs sued the Hales, the partnership, the LLC, and other entities not relevant to this appeal, alleging breach of contract, fraud and misrepresentation, "attempt at purchase," embezzlement and fraud, "failure of equal distribution," "misrepresentation in corporate documents," and "Robert Hale was acting attorney for all parties."

[¶ 4] In a pretrial order addressing numerous motions, the district court denied the Hales' motion to dismiss the case as moot after they withdrew their offer to buy out the Kramlichs. The court, however, dismissed the action and ordered the parties to submit their disputes to arbitration based on the "broad" arbitration provision in the LLC operating agreement, which provides:

"Any dispute, claim, or controversy arising out of or relating to this agreement or the breach thereof shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association. Judgment upon the

award rendered by said arbitration may be entered in any court having jurisdiction. Costs of arbitration shall be borne equally."

[¶ 5] The district court explained:

"In the end, the Court's decision rests on the strong state and federal policy favoring the arbitration process, and any doubt the Court may have concerning the scope of arbitrable issues in the instant case is decided in favor of arbitration.

"Furthermore, the <u>Complaint</u> in this action is not a model of clarity. The causes of action included in the <u>Complaint</u> are a mix of allegations, some of which sound pertinent to the identified cause of action and some of which do not, and it is often difficult to determine which of the entities involved in this action are implicated in the various causes of action. The Kramlichs, as plaintiffs, were responsible for formulating the issues, and any lack of clarity in the <u>Complaint</u> and any confusion of issues falls squarely at the feet of the Plaintiffs.

"As a result, the issues raised by the Kramlichs in their <u>Complaint</u> are as interwoven as the entities upon which they are based. Combining the lack of clarity with the inter-relatedness of the issues and entities, the Court finds that the arbitration clauses in the two Operating Agreements are sufficient to send all of the issues to arbitration."

## II

■ [¶ 6] The Kramlichs argue the district court erred as a matter of law in ordering arbitration because the partnership agreement did not contain an arbitration clause.

■ [¶ 7] The parties do not dispute that North Dakota's Uniform Arbitration Act, N.D.C.C. ch. 32–29.3, applies in this case. Under N.D.C.C. § 32–29.3–06(2), "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." When a court is requested to determine the applicability of an arbitration clause, the court conducts a summary proceeding based on the parties' pleadings, discovery, affidavits, and other evidence, documentary or oral, if necessary. *See, e.g.*, 1 Thomas H. Oehmke, *Commercial Arbitration* § 20:10 (3d ed. 2017); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 984 (10th Cir. 2014); *Hutton & Hutton Law Firm, LLC, v. Girardi & Keese*, 96 F.Supp.3d 1208, 1230–31 (D. Kan. 2015); *Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App.4th 1276, 58 Cal.Rptr.3d 5, 11 (2007); *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 351–52 (Mo. 2006); *Estate of Guerrero*, 465 S.W.3d 693, 700–01 (Tex. Ct. App. 2015). "An order granting a motion to compel arbitration is reviewed de novo on appeal, unless the district court's decision was based on factual findings, which will only be reversed on appeal if they are clearly erroneous." *26th Street Hosp., LLP v. Real Builders, Inc.*, 2016 ND 95, ¶ 11, 879 N.W.2d 437; *see also Schwarz v. Gierke*, 2010 ND 166, ¶ 11, 788 N.W.2d 302.

■ [¶ 8] Although this Court has not decided whether an arbitration clause in one agreement may be applied to disputes arising under another agreement that lacks an arbitration clause, a substantial body of case law addresses the issue. "A broadly-worded agreement in one contract can require arbitration of disputes arising under related contracts." 4 Thomas H. Oehmke, *Commercial Arbitration* § 140:3 (3d ed. 2016). To determine whether an arbitration provision in one agreement should be applied to other agreements, "[i]n addition to the relationship between

two or more agreements and their subject matter, courts consider whether the parties to the separate agreements are identical, whether the underlying agreements were executed closely in time, and the breadth of the language used in the arbitration clause." *Teel v. Aaron's, Inc.*, No. 3:14-cv-640-J-32PDB, 2015 WL 1346846, at *5 (Dist. Ct. M.D. Fla. March 24, 2015) (footnotes omitted).

[¶ 9] A review of case law addressing the issue is helpful. In *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308, 1310 (11th Cir. 2005), a husband and wife executed a mortgage and the husband alone executed a promissory note. Both documents were signed on the same day, but only the promissory note contained an arbitration clause providing: "All disputes, claims or controversies arising from or relating to this contract or the relationships which result from this contract ... shall be resolved by binding arbitration." *Id.* The court concluded the arbitration provision in the promissory note was broad enough to require arbitration of the couple's putative class action alleging failure to provide notice of the transfer of the servicing of their loan. *Id.* at 1310–11. The court further held that the wife was equitably estopped from relying upon her non-signatory status on the promissory note to bar invocation of the arbitration clause against her because she was claiming the benefit derived from her status as a borrower under the note. *Id.* at 1312.

[¶ 10] In *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1458 (10th Cir. 1995), five of six joint venture agreements between the parties contained arbitration clauses providing in part: "Any matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement shall be settled by arbitration." Disputes arose relating to the agreement containing no arbitration clause. *Id.* at 1461. The court

concluded the arbitration clauses in the other agreements were broad enough to cover disputes arising under the agreement containing no arbitration clause. *Id.* at 1462. In *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 35–36 (2d Cir. 1987), a collective bargaining agreement provided that not only would arbitration be required for disputes involving "interpretation or application of any clause" of the agreement, but also "any acts, conduct or relations between the parties ... directly or indirectly, claiming to be aggrieved." The court held the arbitration agreement was broad enough to include disputes arising under a separate memorandum of understanding containing no arbitration clause. *Id.* at 36. In *Consol. Brokers Ins. Servs., Inc. v. Pan–Am. Assurance Co., Inc.*, 427 F.Supp.2d 1074, 1083 (D. Kan. 2006), a contract between the parties provided "any disputes between the parties shall be resolved by arbitration." The court held this provision was broad enough to extend to disputes arising under another contract with no arbitration clause where both contracts were executed on the same day. *Id.*

[¶ 11] Courts have reached contrary results in cases involving narrower arbitration agreements even though the contracts were related. In *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278, 1281 (Colo. Ct. App. 2001), the parties entered into a purchase agreement which contained an arbitration clause providing: "Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration." The purchase agreement further required the parties to enter into an employment agreement, which they subsequently executed but which did not contain an arbitration clause. *Id.* The court held that while claims based on violation of the purchase agreement were subject to arbitration, claims relating to the employment agreement were not

arbitrable. *Id.* at 1282–84. The court emphasized that the purchase agreement required arbitration of claims "arising out of or relating to this agreement." *Id.* at 1283. The court also noted that the two agreements could have been expressed in a single contract, but "the fact that the parties chose to execute two separate agreements emphasizes that their mutual intent was to treat the obligations established by each separately." *Id.* at 1284.

[¶ 12] A similar result was reached in *Santa Fe Tech., Inc. v. Argus Networks, Inc.*, 131 N.M. 772, 42 P.3d 1221 (N.M. Ct. App. 2001). In that case, a corporate merger agreement between the parties required arbitration of "any breach, default, dispute, controversy, or claim arising out of or relating to this Agreement." *Id.* at 1238. The claims in the lawsuit related to a separate federal contract. *Id.* Although the federal contract was related to the agreement and the merger would not have gone through without the federal contract, the court refused to order arbitration of the claims. *Id.* at 1238–39. The court concluded the defendants' construction of the arbitration provision in the merger agreement was too broad because it "more narrowly .... covers only those disputes arising out of or relating to the Agreement." *Id.* at 1239. In *Wilkinson v. Dean Witter Reynolds, Inc.*, 933 P.2d 878, 879 (Okla. 1997), a family opened three accounts containing an arbitration clause and an IRA account that did not contain an arbitration provision. The arbitration clauses provided that "all controversies ... arising out of or concerning any such accounts, any transactions between us or for such accounts, or the construction, performance or breach of this or any other agreement between us, whether entered into prior to, on or subsequent to the date below, shall be determined by arbitration only." *Id.* The court refused to order arbitration of the plaintiff's claims relating to the IRA because the "parties were different as to each account, and the nature of the accounts containing arbitration provisions was significantly different from the IRA." *Id.* at 880. *See also Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1345, 1350 (11th Cir. 1982) (Car Contract requiring arbitration of "[a]ny difference or dispute arising hereunder" did not apply to lease agreement because "[a]lthough the arbitration clause is broad, it is applicable only to disputes arising under the Car Contract ... and nothing more." (footnote omitted)).

[¶ 13] In North Dakota, "We have recognized a strong state and federal policy favoring the arbitration process, and we resolve any doubts concerning the scope of arbitrable issues in favor of arbitration when there is a broad arbitration clause and no limitations or exclusions." *Real Builders*, 2016 ND 95, ¶ 21, 879 N.W.2d 437; see also *Schwarz*, 2010 ND 166, ¶ 11, 788 N.W.2d 302. Nevertheless, "[b]ackground principles of state contract law control the interpretation of the scope of an arbitration agreement, including who is bound by the agreement." *Real Builders*, at ¶ 27. One rule for construing contracts requires that we construe words in a contract in their ordinary and popular sense, unless they are used by the parties in a technical sense or are given a special meaning by the parties. See N.D.C.C. § 9–07–09; *State ex rel. Stenehjem v. Philip Morris, Inc.*, 2007 ND 90, ¶ 14, 732 N.W.2d 720.

[¶ 14] We agree with the district court that the LLC and the partnership, as well as the issues in the complaint, are interrelated. However, the arbitration clause in the LLC operating agreement requires arbitration only of "[a]ny dispute, claim, or controversy arising out of or relating to this agreement or the breach thereof."

(Emphasis added.) Although we described a similar arbitration provision as "broad" in *Real Builders*, 2016 ND 95, ¶ 22, 879 N.W.2d 437, the plain meaning of this arbitration clause does not extend its coverage to other agreements executed by the parties. Moreover, the partnership agreement was executed almost 14 months after the LLC operating agreement was executed, negating any argument that the agreements were close in time. The parties to the agreements also are not identical. Glory Kramlich and Susan Hale are partners in the partnership, but are not members of the LLC. We conclude the district court erred as a matter of law in compelling arbitration of all issues relating to either Somerset–Minot, LLC or Somerset Court Partnership.

[¶ 15] Of course, the Somerset–Minot, LLC operating agreement requires that any claims raised by the Kramlichs "arising out of or relating to this agreement or the breach thereof" must be sent to arbitration. The arbitration clause further requires that arbitration be conducted "in accordance with the then current rules of the American Arbitration Association." Whether a particular dispute is arbitrable usually is an issue for judicial determination unless the parties clearly provide otherwise. *See Real Builders*, 2016 ND 95, ¶ 23, 879 N.W.2d 437; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). As we noted in *Real Builders*, at ¶ 24, "Rule 7(a) of the AAA Commercial Arbitration Rules states, 'The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" Incorporation of the AAA rules "constitutes clear and unmistakable evidence the parties agreed to arbitrate arbitrability." *Real Builders*, at ¶ 24.

[¶ 16] Therefore, the arbitrator must decide which claims arise from or relate to the operating agreement before the district court may decide the remaining claims arising from or related to the partnership agreement. *See Real Builders*, 2016 ND 95, ¶¶ 5–6, 879 N.W.2d 437 (affirming stay of "anything that cannot be arbitrated ... pending the ordered arbitration.").

III

[¶ 17] We briefly address the other issues raised by the parties, which are not rendered moot by our ruling above.

A

[¶ 18] The Kramlichs argue the district court violated their right to a jury trial by compelling arbitration.

[¶ 19] "A party may, of course, waive the jury trial right by signing an agreement to arbitrate or by binding itself to arbitration as a nonsignatory through traditional principles of contract or agency law." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 164 (4th Cir. 2004); *see also* Uniform Arbitration Act (2000) § 6 cmt. 7, 7 U.L.A. 30 (2009). Gary Kramlich signed the LLC operating agreement containing the arbitration clause and, assuming Glory Kramlich has a claim against the LLC, she waived her right to a jury trial by pursuing claims under her husband's rights granted by the agreement. *See Blinco*, 400 F.3d at 1312 ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."). We conclude this argument is without merit.

B

[¶ 20] The Hales argue in their cross-appeal the district court should have dismissed the Kramlichs' lawsuit as moot because the Hales withdrew their offer to buy the Kramlichs' interests in the partnership and the LLC.

[¶ 21] Courts may adjudicate actual controversies before a court. *See Interest of W.O.*, 2004 ND 8, ¶ 10, 673 N.W.2d 264. No actual controversy exists if events occur which make it impossible for the court to issue relief, or if the lapse of time has rendered the issue moot. *Id.* Here, the district court cataloged the Kramlichs' claims and concluded those causes of action were not mooted by the Hales' withdrawal of the offer to buy the Kramlichs' interests. We agree and conclude that, at this point in the proceedings, the Kramlich's various causes of action are broad enough to survive Hales' withdrawal of their purchase offer. The lawsuit is not moot.

IV

[¶ 22] We affirm the district court's order insofar as it compels arbitration of claims arising out of or relating to Somer-set–Minot, LLC. We reverse the order insofar as it compels arbitration of claims arising out of or relating to Somerset Court partnership. We remand for the court to stay judicial proceedings pending resolution of the arbitration proceedings. *See Real Builders*, 2016 ND 95, ¶¶ 5–6, 879 N.W.2d 437; *see also Breaker*, 23 P.3d at 1286.

[¶ 23] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

[¶ 24] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.