Tufte, Justice.
 

 [¶ 1] Merritt Charles Horning III; Riggers Store Holdings, LLC; Riggers Store 1, LLC; Chase Merritt Management, Inc.; Chase Merritt, LP; and Racers Store Management, LLC (collectively the "Horning defendants") appeal from a district court order denying their motion to compel arbitration of Raymond Melendez's lawsuit against them. The issues in this appeal involve whether Melendez's claims against the Horning defendants concerning the operation of a convenience store in Williston are arbitrable under an arbitration clause in an operating agreement for Riggers Store Holdings. We conclude the district court erred in deciding Melendez's claims are not arbitrable, and we reverse the order denying arbitration and remand for entry of an order compelling arbitration.
 

 I
 

 [¶ 2] The resolution of the issues raised in this appeal requires a description of the relationship of the entities involved in the proceeding. Melendez, Greg Bradford, and Chase Merritt, LP, a Delaware limited partnership, are the three sole members of
 
 *117
 
 Riggers Store Holdings, a Delaware limited liability company. Chase Merritt Management, a Delaware corporation, is the manager of Riggers Store Holdings. Horning is a limited partner of Chase Merritt, LP, and is the president and owns all the stock of Chase Merritt Management. Riggers Store Holdings is the sole member of Riggers Store 1, a Delaware limited liability company and convenience store located in Williston. Riggers Store Holdings appointed Chase Merritt Management as the manager of Riggers Store 1, and Chase Merritt Management contracted with Racers Store Management, a Delaware limited liability company, to operate Riggers Store 1.
 

 [¶ 3] Melendez, Bradford, and Chase Merritt, LP, as the members, and Chase Merritt Management, as the manager, executed an operating agreement for Riggers Store Holdings. The operating agreement stated that it "shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware" and that the "rights and obligations of the Members and the Manager, and the formation, operation, administration and termination of the Company shall be governed by the laws of the State of Delaware." The operating agreement also included an arbitration clause requiring arbitration governed by the California Arbitration Act "[i]f any controversy or dispute arises between or among the Members or the Manager or their respective representatives concerning any provision of this Agreement or the rights and duties of any person or entity in relation thereto."
 

 [¶ 4] Melendez claimed that Horning, through his ownership and control of the interrelated companies, controlled four convenience stores in Williston, Minot, and Stanley, including Riggers Store 1 in Williston, and that Horning converted assets and cash belonging to Riggers Store 1 for his personal benefit and the benefit of the other convenience stores. Melendez had a minority ownership interest in Riggers Store 1 through his interest in Riggers Store Holdings, but he did not have an ownership interest in the other three convenience stores. Melendez sued the Horning defendants and Bradford, alleging that Horning, individually and through his ownership and control of the companies, had a fiduciary duty of good faith and fair dealing to the minority owners of Riggers Store Holdings and that Horning and his companies had a duty to comply with all applicable operating agreements and documents involving Riggers Store Holdings and Riggers Store 1. Melendez specifically alleged that Horning, through his control of the companies, unlawfully converted and commingled inventory, cash, and other assets belonging to Riggers Store Holdings and Riggers Store 1. Melendez sought: (1) the appointment of a new managing member for Riggers Store 1 and Riggers Store Holdings; (2) a declaration of the ownership interests of the members of Riggers Store Holdings; (3) an accounting of commingled and converted assets and cash; and (4) a determination that Horning's conduct constituted actual and constructive fraud.
 

 [¶ 5] Riggers Store 1 and Racers Store Management moved for a preliminary injunction under N.D.C.C. ch. 32-06, alleging Melendez had forcibly taken control of Riggers Store 1 and seeking an order directing Melendez and anyone acting at his behest or control to immediately remove themselves from the operation of Riggers Store 1. The district court described the status quo as Melendez having assumed management and control of the convenience store, and the court concluded the movants had not shown a substantial probability of succeeding on the merits and
 
 *118
 
 denied their motion for a preliminary injunction.
 

 [¶ 6] Horning, Chase Merritt Management, and Chase Merritt, LP, thereafter moved to dismiss Melendez's complaint for lack of personal jurisdiction. All the Horning defendants also moved to dismiss Melendez's complaint for failure to state a cause of action and alternatively sought an order compelling arbitration of his claims.
 

 [¶ 7] The district court denied the motions, ruling that it had personal jurisdiction over Horning and that Melendez's lawsuit stated a cause of action. The court ruled it lacked authority to compel Horning, Riggers Store 1, and Racers Store Management to arbitrate, because they were not signatories to the Riggers Store Holdings operating agreement. The court held the arbitration clause in that operating agreement did not compel arbitration of Melendez's claims, because those claims did not arise out of the interpretation or enforcement of the operating agreement or touch on contractual rights or performance under that agreement. The court explained the operating agreement did not implicate the Horning defendants' fiduciary duties and the arbitration clause did not bar Melendez from seeking judicial relief. The court concluded that because Melendez's claims did not arise from the operating agreement, he could not be compelled to arbitrate those claims.
 

 II
 

 [¶ 8] Under N.D.C.C. § 32-29.3-28(1)(a), "[a]n appeal may be taken from ... [a]n order denying a motion to compel arbitration." We apply a
 
 de novo
 
 standard of review to decisions denying or granting a motion to compel arbitration, unless the district court's decision is based on factual findings, in which case we apply the clearly erroneous standard to the factual findings.
 
 See
 

 Kramlich v. Hale
 
 ,
 
 2017 ND 204
 
 , ¶ 7,
 
 901 N.W.2d 72
 
 ;
 
 26th St. Hosp., LLP v. Real Builders, Inc.
 
 ,
 
 2016 ND 95
 
 , ¶ 11,
 
 879 N.W.2d 437
 
 ;
 
 Schwarz v. Gierke
 
 ,
 
 2010 ND 166
 
 , ¶ 11,
 
 788 N.W.2d 302
 
 . In considering arbitration claims, the United States Supreme Court has recognized four generally applicable principles: (1) arbitration is a contractual matter and parties cannot be compelled to arbitrate disputes that they have not agreed to submit to arbitration; (2) the question of whether the parties agreed to arbitrate is decided by a court unless the parties clearly and unmistakenly require an arbitrator to decide arbitrability; (3) a court may not rule on the potential merits of claims that the parties have agreed to submit to arbitration; and (4) any doubts about the applicability of an arbitration clause should be resolved in favor of a strong public policy for arbitration.
 
 AT&T Techs., Inc. v. Commc'ns Workers of Am.
 
 ,
 
 475 U.S. 643
 
 , 648-50,
 
 106 S.Ct. 1415
 
 ,
 
 89 L.Ed.2d 648
 
 (1986). Our decisions also recognize those same principles.
 
 See generally
 

 Kramlich
 
 , at ¶¶ 7, 13, 15 ;
 
 26th St. Hosp.
 
 , at ¶¶ 13, 21, 23-25 ;
 
 Schwarz
 
 , at ¶¶ 11, 16-17.
 

 III
 

 [¶ 9] The Horning defendants argue the district court should have compelled arbitration of Melendez's claims. They argue the court erred in ruling it lacked authority to compel Horning, Riggers Store 1, and Racers Store Management to arbitrate because they were not signatories to the Riggers Store Holdings operating agreement. They argue nonsignatories may compel signatories to arbitrate claims when the nonsignatories consent to arbitration and the claims are founded on and intertwined with the underlying contractual obligations.
 

 [¶ 10] The Riggers Store Holdings operating agreement stated that the limited liability company was formed under Delaware
 
 *119
 
 law, that the rights and obligations of the members and manager and the operation and administration of the company were governed by Delaware law, and that the operating agreement was governed by and construed and enforced in accordance with Delaware law. An arbitration clause in the operating agreement also said that any controversy or dispute concerning any provision of the agreement or the rights and duties of any person or entity in relation thereto shall be submitted to arbitration governed by the California Arbitration Act.
 

 [¶ 11] Decisions in both California and Delaware have held that a signatory plaintiff may be estopped from denying arbitration if the plaintiff sues a nonsignatory affiliated with a signatory entity and the plaintiff's claims are based on facts that are intertwined with arbitrable claims.
 
 See
 

 Rowe v. Exline
 
 ,
 
 153 Cal.App.4th 1276
 
 ,
 
 63 Cal.Rptr.3d 787
 
 , 794-98 (Cal. Ct. App. 2007) (holding nonsignatories entitled to compel signatory to arbitrate under equitable estoppel when signatory's claims are inherently inseparable from or intertwined with arbitrable claims);
 
 McLaughlin v. McCann
 
 ,
 
 942 A.2d 616
 
 , 627 nn.42, 43 (Del. Ch. Ct. 2008) (recognizing signatories may not escape arbitration under equitable estoppel when nonsignatories consent to arbitration, there is a close relationship between the involved entities, and the signatory's claims are intertwined with the underlying contractual obligations).
 

 [¶ 12] In
 
 McLaughlin
 
 ,
 
 942 A.2d at
 
 627 n.43, the Delaware Chancery Court recognized the difference between a nonsignatory consenting to arbitration and compelling a signatory to arbitrate intertwined claims between interrelated entities and a signatory seeking to compel a nonsignatory to arbitrate.
 
 See also
 

 Douzinas v. Am. Bureau of Shipping, Inc.
 
 ,
 
 888 A.2d 1146
 
 , 1153 (Del. Ch. Ct. 2006) (stating that "[u]nder abundant authority, nonsignatories are permitted to compel signatories to arbitrate disputes under a theory of equitable estoppel").
 

 [¶ 13] Our decisions have also recognized a nonsignatory may compel a signatory to arbitrate under equitable estoppel.
 
 26th St. Hosp.
 
 ,
 
 2016 ND 95
 
 , ¶¶ 28-31,
 
 879 N.W.2d 437
 
 (discussing equitable estoppel principles authorizing nonsignatory to compel signatory to arbitrate and applying doctrine).
 
 See
 

 Schwarz
 
 ,
 
 2010 ND 166
 
 , ¶ 25,
 
 788 N.W.2d 302
 
 (extending arbitration provisions to nonsignatory third-party beneficiaries);
 
 David v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
 
 ,
 
 440 N.W.2d 269
 
 , 275 (N.D. 1989) (recognizing nonsignatories to arbitration clause may be deemed parties through ordinary contract and agency principles). In
 
 26th St. Hosp.
 
 , at ¶ 30 (quoting
 
 MS Dealer Serv. Corp. v. Franklin
 
 ,
 
 177 F.3d 942
 
 , 947 (11th Cir. 1999) ), we described the application of equitable estoppel to allow a nonsignatory to compel arbitration in at least two circumstances:
 

 First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise
 
 *120
 
 the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.
 

 [¶ 14] Here, the district court said Horning, Riggers Store 1, and Racers Store Management were not signatories to the operating agreement, and without any further analysis, the court decided it did not have authority to compel those nonsignatories to arbitrate. However, the nonsignatory parties are seeking to compel arbitration by Melendez, a signatory to the operating agreement, under circumstances in which Melendez claims Horning had effective control over the entire convenience store chain. Melendez's claims raise allegations of intertwined conduct by the nonsignatories and related signatories to the operating agreement and raise interrelated allegations about his common ownership and control of the companies. We conclude the district court erred in concluding it did not have authority to compel the nonsignatories to arbitrate in this case.
 

 IV
 

 [¶ 15] The Horning defendants argue the district court erred in construing the arbitration clause and in ruling Melendez's claims were not arbitrable.
 

 [¶ 16] The language of the arbitration clause requires arbitration if "any controversy or dispute arises between or among the Members or the Manager or their respective representatives concerning any provision of this Agreement or the rights and duties of any person or entity in relation thereto." The district court said the scope of the arbitration clause was "likely broad" and required arbitration of claims that touch on contractual rights or performance. The court explained, however, that Melendez's claims neither arise from the interpretation or enforcement of the operating agreement nor touch on contractual rights or performance under the agreement and do not implicate fiduciary duties. The court said claims about an alleged breach of a fiduciary duty were outside the scope of the operating agreement and ruled Melendez's claims were not arbitrable.
 

 [¶ 17] In
 
 Parfi Holding AB v. Mirror Image Internet, Inc.
 
 ,
 
 817 A.2d 149
 
 , 155 (Del. 2002), the Delaware Supreme Court described an analysis for determining arbitrability:
 

 First, the court must determine whether the arbitration clause is broad or narrow in scope. Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration. If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract. If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.
 

 In
 
 Parfi Holding
 
 , at 156-57, the issue was whether an arbitration clause in a separate underwriting agreement encompassed fiduciary duties to require arbitration of claims about those duties. The Delaware Supreme Court recognized the arbitration clause was not contained in a basic contract that gave rise to the fiduciary relationship, but in a separate underwriting agreement.
 

 Id.
 

 at 156-57
 
 . The court held claims about a fiduciary duty were not arbitrable because those claims were not dependent on the separate underwriting agreement.
 
 Id
 
 .
 

 [¶ 18] In
 
 Elf Atochem N. Am., Inc. v. Jaffari
 
 ,
 
 727 A.2d 286
 
 , 293-96 (Del. 1999), the Delaware Supreme Court held an arbitration clause in an agreement establishing
 
 *121
 
 a limited liability company encompassed claims for breach of fiduciary duties raised by a member of the company. In that case, the arbitration clause required arbitration of any controversy or dispute arising out of the agreement creating the limited liability company.
 
 Id
 
 . at 288. The court held the plaintiff's claims for breach of fiduciary duties were directly related to the manager's duties and obligations under the agreement establishing the company and were arbitrable.
 

 Id.
 

 at 293-95
 
 .
 

 [¶ 19] Arbitration clauses are construed under rules for interpreting contracts and in view of the strong federal and state policy favoring arbitration.
 
 Parfi Holding
 
 ,
 
 817 A.2d at
 
 155-56 ;
 
 Elf Atochem
 
 ,
 
 727 A.2d at 291-92
 
 .
 
 See also
 

 Kramlich
 
 ,
 
 2017 ND 204
 
 , ¶ 13,
 
 901 N.W.2d 72
 
 . Under the plain language of the arbitration clause in Riggers Store Holdings' operating agreement, "[i]f any controversy or dispute arises between or among the Members or the Manager or their respective representatives concerning any provision of this Agreement or the rights and duties of any person or entity in relation thereto, ... such dispute or controversy shall be submitted to arbitration." We agree with the district court that the language of that arbitration clause is broad.
 
 See
 

 Schwarz
 
 ,
 
 2010 ND 166
 
 , ¶¶ 17-29,
 
 788 N.W.2d 302
 
 (construing broad language of arbitration provision covering "[a]ny controversy arising out of or relating ... to any ... accounts or ... transactions" to require arbitration of claims for alleged breach of duty).
 

 [¶ 20] Under Delaware law, managers of a limited liability company owe traditional fiduciary duties of loyalty and care to the company's members unless the parties modify or eliminate those duties in the operating agreement.
 
 William Penn P'ship v. Saliba
 
 ,
 
 13 A.3d 749
 
 , 756 (Del. 2011). The language in Riggers Store Holdings' operating agreement requires Riggers Store Holdings, by itself or through one or more newly formed subsidiaries, to acquire, own, improve, develop, market, and sell and otherwise use real property in Williston for Riggers Store 1 and to engage in all activities related thereto. The operating agreement said the purpose of the company was to manage and deal with the project according to a business plan and to take any and all actions necessary and appropriate for that purpose. The operating agreement also includes language describing the management and operation of Riggers Store Holdings, authorizing the manager to manage and control the company's business and affairs, authorizing an accounting, and giving each member the right to inspect the books and records of the company. Nothing in the Riggers Store Holdings operating agreement purports to modify or eliminate the manager's fiduciary duties to the members. Melendez's claims are about commingling or conversion of funds related to Riggers Store 1 and include claims for appointment of a new manager, a declaration of the rights and legal relationships of the parties, an accounting, and a determination that Horning's conduct constituted fraud.
 

 [¶ 21] Riggers Store Holdings' operating agreement is more like the broad arbitration clause in the general limited liability company agreement at issue in
 
 Elf Atochem
 
 ,
 
 727 A.2d at 293-95
 
 , than the separate underwriting agreement at issue in
 
 Parfi Holding
 
 ,
 
 817 A.2d at 155-57
 
 . Like the agreement at issue in
 
 Elf Atochem
 
 , Riggers Store Holdings' operating agreement describes the members' rights and obligations and their relationship with the manager for the operation of Riggers Store 1. We conclude Melendez's claims touch on the contractual rights and performance in Riggers Store Holdings' operating
 
 *122
 
 agreement and are arbitrable under the broad arbitration clause in the operating agreement. We therefore conclude the district court erred in determining Melendez's claims were not arbitrable and in denying the motion to compel arbitration of those claims.
 

 V
 

 [¶ 22] We reverse the order denying the motion to compel arbitration and remand for entry of an order compelling arbitration.
 

 [¶ 23] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.